## WINE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5810.

Circuit Court of Appeals, Seventh Circuit.

Dec. 29, 1936.

Arthur R. Foss, of Chicago, Ill., for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Louise Foster, Sp. Assts. to Atty. Gen., for respondent.

Before EVANS, Circuit Judge, and LINDLEY and BALTZELL, District Judges.

BALTZELL, District Judge.

On April 30, 1935, the Board of Tax Appeals entered an order for a deficiency in the income tax of petitioner for the year 1925 of $3,917.31, and an overpayment for the year 1926 of $85.39, thus sustaining the determination of the Commissioner.

Petitioner is a resident of Kewanee, Ill., and in the year 1925 was the owner of valuable unimproved real estate at 63rd and Green streets in the city of Chicago. The Chicago City Bank & Trust Company (hereinafter referred to as the bank) desired a long-term lease of this real estate, and through one of its employees, a Mr. Chandler, contacted petitioner several months prior to the execution of the lease in question, looking toward the leasing of such property. Petitioner had a short time prior thereto razed an old building on the real estate in question and was preparing to erect a large building thereon himself. He had no intention at that time of leasing the property to the bank or to any one else, and was not interested in the proposition of the bank. Subsequently, the president

of the bank made an effort to lease the property, but failed, and the bank then employed a real estate agent by the name of Englestein to negotiate a lease. Negotiations extended over a considerable length of time and finally resulted in the execution of a 99-year lease by petitioner on August 6, 1925, not to the bank directly, but to Frank C. Rathje, attorney for and nominee of the bank. Before the execution of the lease, it was understood by all parties, including petitioner, that the real party in interest was the bank and that the lease would be assigned to it within 60 days. This information was confirmed by a letter dated August 6, 1925, signed by Frank C. Rathje, and the Chicago City Bank & Trust Company, by Louis Rathje, president, the last paragraph of which reads as follows: "It is my purpose to assign said lease to Chicago City Bank & Trust Co. within 60 days from and after this date." It was accordingly assigned by Frank C. Rathje to the bank on September 2d following. During all the negotiations, petitioner was not represented by any real estate agent, but was represented solely by attorneys to whom he paid a fee of $5,242.68 for their services. The lease provided for an annual rental of $35,000, beginning on July 1, 1926, and payable in monthly installments of $2,916.67 on the first day of each and every month thereafter during the term of the lease. It also provided for the payment of $17,500 for the first 11 months on execution and delivery of the lease.

In the execution of the lease the bank was represented by its attorney, Frank C. Rathje, an employee Chandler, and a real estate agent named Englestein. Neither of these parties represented petitioner, and no contract or understanding of any kind was had between them or either of them and petitioner whereby they were to represent him or whereby he was to pay them any commission or fee of any kind for their services. In fact, they were employed by the bank to assist in the negotiation of the lease and were afterwards paid by it for their services in so representing it.

According to the testimony of petitioner, no agreement was had with the bank that he would pay it any money for the execution of the lease, but he testified that he had an understanding with Frank C. Rathje, prior to its execution, that he would turn back to the lessee, or pay to it, an equivalent of one year's rent. This understanding, he said, was in accordance with a custom as represented to him by Rathje. The amount of the yearly rental to be turned back to the lessee was, as understood by petitioner, to be $35,000. In accordance with this understanding, there was handed to petitioner by the bank, on the day of the execution of the lease, a cashier's check in the sum of $17,500, which check was indorsed by him immediately and returned to the bank. This money never went into the account of petitioner, and the only action taken by him, with reference to the check, was the indorsement of his name thereon. In addition, petitioner executed two promissory notes on that date, each in the principal sum of $8,750, due January 1, 1926, payable to himself. He indorsed these notes in blank and gave them to the bank. The aggregate amount of the cashier's check and the two notes represents the $35,000, which is the equivalent of one year's rent. Out of this amount the bank paid to its real estate agent Englestein, on August 6, 1925, the sum of $8,750 by cashier's check and delivered to him one of petitioner's notes in the principal sum of $8,750, making a total of $17,500, which represents the amount paid him for his services in negotiating the lease on behalf of the bank. At the same time there was paid to Chandler by the bank the sum of $1,000 for services rendered by him on behalf of the bank in the negotiation of the lease. Petitioner paid the two notes on December 31, 1925, to the bank, and, in turn, the bank paid Englestein the amount of the note held by him, and took up the same. It then delivered to petitioner both notes stamped "paid." The remainder of the $35,000, after paying Chandler and Englestein, or $16,500, was retained by the bank and designated on its records as "trust profits."

Petitioner kept his books on the cash receipts and disbursement basis and so filed his income tax returns. In his return for the year 1925 he reported $17,500 as rental income from this lease and deducted the amount paid his attorneys in the sum of $5,242.68 and $35,000 as commission paid for negotiating the lease. In his return for 1926 he reported income from the leased property in the sum of $35,000 and deducted the sum of $17,500 as commission for negotiating the lease. The return for 1926 is obviously incorrect and

was so found by respondent, for he did not pay the sum of $17,500 or any other sum that year for the negotiation of the lease. Neither did he receive the sum of $35,000 as income from the leased property for that year. He did, however, receive the total sum of $17,500.02 during the last six months of that year in monthly installments, which represents the amount of rent due under the lease for that period. Respondent determined that (1) when the lease was executed, Rathje, and not the bank, was the lessee; (2) that petitioner received $17,500 rent in 1925 and $17,500.02 in 1926; (3) that petitioner expended $40,242.68 in 1925 in procuring the lease; and (4) that the latter sum should be capitalized equally over a term of the lease. Consequently, he was allowed a deduction in 1925 of $5/12$ of $1/99$ of $40,242.68, and in 1926 a deduction of $1/99$ of such amount. This determination was approved by the Board.

The question presented is whether petitioner received any taxable income in the form of rent under the lease during the years 1925 and 1926, or whether the amount of the rent, as provided by the lease for those two years, was abated by the return to the bank of the amount due under the lease for that period. It is the contention of petitioner that he received no rent for those two years, but that the amount of the rent provided by the lease was returned to the bank, not as a commission for the negotiation of the lease, but as an abatement of the rent in accordance with a previous understanding. The Board of Tax Appeals found against such contention, and, as a result thereof, he is prosecuting this appeal.

The evidence is uncontradicted that at the time of the execution of the lease there was handed to petitioner, by the bank, a cashier's check for $17,500, which represented the amount of rental for the premises leased from that date to July 1, 1926. Neither is there any dispute but that such check was immediately indorsed by petitioner and returned to the bank. It was in his possession only long enough for him to indorse it. The bank then received the proceeds of the check. Under the uncontradicted evidence, petitioner, at the same time, executed two promissory notes, each in the principal sum of $8,750, and delivered them to the bank. The aggregate amount of these two notes and the check is $35,000, which represents one year's rent-

al under the lease, and the amount due, according to its terms during the years 1925 and 1926. Out of this amount, the bank paid its real estate broker for his services to it the sum of $17,500, and to its employee for his services the sum of $1,000. All of these transactions were in the year 1925. There is no evidence that petitioner was represented at any time in the negotiations or execution of the lease by the bank or by any other person except his attorneys whom he paid for their services. No question with reference to the fee paid these attorneys is presented in this case.

While the lessee named in the lease is Frank C. Rathje, yet the real party in interest was the bank, and Rathje was simply its nominee, and all parties concerned understood this to be the fact. In order that the $35,000 may be considered as commission paid by petitioner, it would seem that it would necessarily have to be paid to some person representing him in the execution of the lease. There is no evidence to justify the conclusion that the bank represented him in the transaction. The evidence is all to the contrary. It is inconsistent to contend that a lessee may represent the lessor in the execution of a lease. The bank in the instant case was the party to whom the lease was to be immediately assigned, and every one connected with the transaction so understood. Therefore, it is apparent that, while the bank was not the lessee named in the lease, it was, as a matter of fact, the real party in interest, from the viewpoint of the lessee. As such, it was not the agent nor the representative of petitioner, but was representing itself. Under these circumstances, it cannot be said that any money paid it by petitioner was paid as a commission or for any services rendered by it in the negotiation or execution of the lease on behalf of petitioner. The payments made were pursuant to a previous understanding that there would be returned to the bank a sum of money equal to one year's rental. The cashier's check, in so far as disclosed by the evidence, represented money belonging to the bank, and not to the lessee named in the lease. When the petitioner indorsed and returned this check to the bank, he had then fulfilled a part of his understanding with the bank and had returned to it one-half of a year's rent. When he paid the two notes which he had previously indorsed to the bank,

he had then completely fulfilled the understanding with the bank and had returned to it the entire amount of one year's rent, or $35,000. This transaction was nothing more than an abatement of the rent to that extent. This being true, he had no taxable income from rent under the lease in question for the years 1925 or 1926, as required in section 213(a) of the Revenue Act 1926 (44 Stat. 23). As was said by the Supreme Court in the case of Eisner, Collector, v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A. L.R. 1570, "Income may be defined as the gain derived from capital, from labor,. or from both combined." While there was paid to petitioner as rent during the year 1926 the sum of $17,500.02, yet, prior to the payments which aggregated this amount, petitioner had paid the bank $17,-500 at the time he paid his two promissory notes which amounted to an abatement of the rent for that year. It is consistent with our conclusion that the transaction between petitioner and the bank constituted an abatement of the rent, when it is considered that the property covered by the lease was unimproved, that the bank contemplated the erection of a bank building thereon, and that some time would necessarily be consumed in its construction. The property would be of little commercial value to the bank during such construction period.

There is no substantial evidence to justify the conclusion that petitioner had a taxable income as rent from the leased property for either of the years 1925 or 1926, and the decision of the Board of Tax Appeals must, therefore, be, and it is, reversed.